UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ESTATE OF PAMELA FAYE, et al.,                                                PLAINTIFFS

v.                                                           CIVIL ACTION NO. 3:09-CV-157-S

MICHAEL B. MATHIS,                                                             DEFENDANT

**MEMORANDUM OPINION**

On or about December 5, 2008, a vehicle driven by Michael Mathis allegedly struck Pamela Faye in a parking lot in Utica, Indiana. Faye was transported to a hospital in Louisville, Kentucky, where she died of her injuries. Her estate, joined by her daughters, April and Amanda Pinkson, sued Mathis for wrongful death in Kentucky state court. Mathis removed the case, invoking this court's diversity jurisdiction,[1] and now seeks to transfer the case to the Southern District of Indiana. For reasons we will explain, that motion will be denied. Because the case will be staying in this court, we also address the choice-of-law question raised by the parties, and conclude that Indiana law will govern the substance of the case.[2]

**I**

In requesting a change of venue, Mathis does not allege that this court is an improper forum. (He maintains a residence and a dental practice in Kentucky.) He instead invokes 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice,

---

[1] We denied the plaintiffs' motion to remand on May 14, 2009, concluding that Mathis is an Indiana citizen and that the parties are therefore completely diverse. *Estate of Faye v. Mathis*, 2009 U.S. Dist. LEXIS 41189 (W.D. Ky. May 14, 2009).

[2] Plaintiffs have moved to supplement the record with certain facts admitted by the defendant in a separate declaratory judgment case currently pending in a Kentucky court. The defendant has filed a response and objection to this motion, but the plaintiffs have missed the February 8, 2010 due date for filing their reply. In the interest of completeness we will grant the motion to supplement. After reviewing the new material, however, we find that it has no bearing on our decision here.

a district court may transfer any civil action to any other district or division where it might have been brought." Because Mathis is an Indiana citizen, venue in the Southern District of Indiana would have been proper. 28 U.S.C. § 1391(a)(1).

We therefore move on to inquire into "the convenience of the parties and witnesses" and "the interest of justice." The Sixth Circuit has affirmed that "the permissive language of the transfer statute" allows the federal district courts "'broad discretion' to determine when" these considerations "make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (*quoting Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). Exercise of our discretion is guided by seven factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the cost of obtaining willing witnesses; (5) the availability of process to compel attendance of unwilling witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705, 713 (W.D. Ky. 2003); *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 398 (E.D. Mich. 1994). To justify transfer, the new forum must be *more* convenient than this one (not equally or less so), and the result of the move must not be merely to shift the inconvenience from one party to the other. *See Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964); 15 Charles Allen Wright, et al., Federal Practice and Procedure § 3848 (3d ed. 2007).

This court has stated in the past that "as a general rule, 'unless the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Rutherford v. Goodyear Tire & Rubber Co.*, 943 F. Supp. 789, 791 (W.D. Ky. 1996) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). We are wary, however, of placing too much reliance on a quotation from *Gulf Oil*, a pre-1404(a) case that dealt with *forum non conveniens*. In *Norwood v.*

*Kirkpatrick*, 349 U.S. 29, 30-32 (1955), the Supreme Court made clear that § 1404(a) was more than a codification of the then-existing *forum non conveniens* jurisprudence, and that transfers are to be granted more freely than were dismissals at common law. It is, of course, still acknowledged that a plaintiff's choice of forum is entitled to some weight when considering a motion to transfer under § 1404(a); that presumption is just not quite as strong as in the *forum non conveniens* setting. *See id.* at 32 (distinguishing § 1404(a) from *forum non conveniens* but stating that "[t]his is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader"). How powerful this presumption should be in the typical case is less than clear, but it is due at least some substantial measure of respect. *See* 15 Wright et al., *supra*, at § 3848 ("Certainly everyone would acknowledge, as have several courts, that [the plaintiff's choice of forum] is a factor, but it is 'held in varying degrees of esteem.'" (citations omitted).). We note, however, that the weight accorded to the plaintiffs' choice of forum is somewhat diminished in this case, due to the fact that they did not choose this forum: They originally filed in state court, and the case ended up here only because the defendants preferred a federal forum and removed. *See Actmedia, Inc. v. Ferrante*, 623 F.Supp. 42, 44 (S.D.N.Y. 1985) ("[S]ince plaintiff did not choose this forum but had its case removed to this court, the rationale behind those cases placing emphasis on plaintiff's choice becomes inapposite."). Nonetheless, they did decide to file in Kentucky, and that preference is entitled to some consideration on our part.

We turn to the test outlined above. The first four factors—relating to the convenience and cost of obtaining evidence and the presence of parties and witnesses—are negligible. It is not as though we are choosing between Kentucky and, say, Oregon. Were we to transfer the case, it would in all likelihood land in the New Albany Division of the Southern District of Indiana. The Hamilton

Federal Building and Courthouse in downtown New Albany sits just across the Ohio river from the Snyder Courthouse in downtown Louisville. The two are approximately six miles apart, certainly less than half an hour by car. If a party or witness can get to New Albany, he can get to Louisville at little additional expense. Similarly, it is no great trek from Louisville to Utica to interview a witness, view documentary evidence, or take a deposition. And anyway the fact that Faye died in a Louisville hospital means that there will be witnesses and evidence drawn from Kentucky as well. Changing venues would simply reduce one group's inconvenience by increasing another's. There is no substantial difference between Louisville and New Albany with respect to convenience or cost.

The fifth factor, availability of compulsory process to obtain unwilling witnesses, theoretically favors New Albany and its ability to require the presence of witnesses who reside anywhere in the state of Indiana. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii). But of the witnesses that have so far been identified, defendant admits that all but one reside within this court's 100-mile subpoena power radius. *See id.* The only witness living outside that area resides in Ohio and outside both courts' subpoena jurisdiction, which means that the Indiana court offers no benefit over this one. Defendants argue that some other witnesses might later be identified within Indiana but further than 100 miles from Louisville, but without specific identification of any such person there is no reason to credit this hypothetical advantage to transferring the case.

Defendants have alerted the court to no substantial practical problems related to trying the case expeditiously and inexpensively in Louisville, so the sixth factor carries no weight.

In light of the fact that the first six factors do not weigh in favor of transferring the case, the interest of justice would have to reveal a very substantial justification for a change of venue to be warranted. There is something to the notion that a case about an accident that occurred in Indiana

and that involved two Indiana residents[3] ought to be tried in an Indiana court. However, this single consideration is not in the court's view sufficient to outweigh the plaintiffs' preference for a Kentucky forum, particularly where transferring the case would result in no significant gains in convenience for anyone involved.

Because the Southern District of Indiana would be, at best, little better than the present court for purposes of convenience and justice, we decline to exercise our discretion to transfer the case, and the defendants' motion will be denied.

## II

The parties also ask for a declaration as to which state's law (Indiana's or Kentucky's) will govern the merits of their dispute. As an initial matter, it is important to distinguish venue from choice of law: "[W]hile they quite frequently rely on common facts, [they] focus on completely different interests. Venue primarily concerns interests of the parties and convenience of the witnesses during litigation; choice of law primarily concerns the state's interest in the litigation." *Rutherford v. Goodyear Tire and Rubber Co.*, 943 F.Supp. 789, 790 (W.D. Ky. 1996).

Sitting in diversity, the court will apply Kentucky choice-of-law rules in determining which jurisdiction's substantive law controls. *McGinnis v. Taitano*, 3 F.Supp.2d 767 (W.D. Ky.1998) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Kentucky courts apply their own law where Kentucky has a significant interest in the case. *Wessling v. Paris*, 417 S.W.2d 259 (Ky. 1967). While "Kentucky prefers the application of its own laws over those of another forum[, . . . the] Court should apply an interest analysis to determine wither it can justify use of Kentucky's laws." *Rutherford*, 943 F.Supp. at 792. Under this interest analysis,

---

[3] It is undisputed that the decedent was at least a temporary resident of Indiana at the time of her death. (*See* Mathis Aff. ¶¶ 5, 8; Howell Aff. ¶¶ 2, 4; April Pinkston Aff. ¶¶ 6-7.)

Kentucky law will apply if the Commonwealth has a significant interest in the case, even if another state's interest is greater. *Id.*

The principal question, then, is whether Kentucky has a significant interest in this litigation. The accident in question occurred in Indiana, so Kentucky could only have such an interest if the persons involved are so connected to the Commonwealth as to justify the application of its laws to a case originating elsewhere. Plaintiffs argue that the necessary relationships are abundant; the court disagrees. We have already concluded that Mathis is not a Kentucky citizen, and although plaintiffs' counsel avers in his brief that the named plaintiffs reside in Kentucky (Pl.'s Submission on Choice of Law 1; Pl's Resp. 2), the record contains no support for this claim. Indeed, the only evidence is to the contrary: both sisters signed a limited power of attorney just after their mother's death, in which they indicate that they are citizens of Missouri and Florida, respectively.

There is some dispute about the decedent's citizenship, an issue that can be a controlling factor in determining choice of law questions.[4] *See*, *e.g.*, *Foster v. Leggett*, 484 S.W.2d 827 (Ky. 1972) (applying Kentucky law to a case involving an auto accident that occurred in Ohio involving an Ohio defendant and a Kentucky plaintiff). Faye held a Kentucky driver's license, which reflected a Louisville address on Mellwood Avenue. April Pinkston, in her affidavit, claims that Faye maintained a permanent home in Louisville, but gives an address on South Preston Street. (April Pinkston Aff. ¶ 6.) Pinkston also avers (*inter alia*) that Faye's personal expenses were billed to a Kentucky address and that Faye was registered to vote in Kentucky. (*Id.* at ¶¶ 6, 9-14.) Supposing

---

[4] While Faye's estate is being probated in Kentucky, we think that has far less relevance than does her actual home at the time of the incident out of which this case arises. The wrongful death and personal injury causes of action are designed to protect the rights of the individual victim and her descendants, not those of her estate.

Pinkston's claims to be true (none is supported by extrinsic or documentary evidence), they are all indicia of Kentucky citizenship.

It is, however, uncontradicted that for well over two years before her death, Faye actually resided in Indiana: first for at least two years as a cohabitant with the defendant at a home he owns in Jeffersonville (Mathis Aff. ¶¶ 5, 8), and then (beginning in September 2008) on her own in an apartment in New Albany rented from Jerry Howell (Howell Aff. ¶¶ 2, 4). April Pinkston tries to explain this away as a "temporary residence" that Faye maintained only "because she had previously rented out the home on Preston Street" (April Pinkston Aff. ¶¶ 6-7), but it is hard to credit this otherwise unsupported claim. First, Faye's driver's license reflects a *Mellwood* Street address, which casts doubt on the idea that her permanent home was on *Preston* Street. More importantly, her Indiana residency appears to have been something more than merely temporary, in that she lived there for over two years and elected to remain there even after she moved out of Mathis's home. The record contains no evidence to indicate that Faye did not intend to establish Indiana as her domicile, or that she intended to move back to Kentucky. Consequently we conclude that she was a citizen of Indiana. *See Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973) ("[C]itizenship . . . means domicile rather than residence . . . . To acquire a domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or *the absence of an intention to make his home elsewhere*." (Emphasis added).).

While KRS 186.010(12) states that possession of a Kentucky driver's license is "prima-facie evidence that the operator is a resident of Kentucky," Faye's license is not "dispositive" of her citizenship, as the plaintiffs would have it. (Resp. 1.) The statute creates only a *rebuttable* presumption, *see Estate of Faye v. Mathis*, 2009 U.S. Dist. LEXIS 41189, at *5 (W.D. Ky. May 14,

2009), and we conclude that Faye's long-term residence in Indiana is controlling. The case is ultimately about an incident in which in which an Indiana citizen allegedly struck another Indiana citizen with his vehicle in a parking lot in Indiana. Kentucky lacks a substantial connection to this litigation. Its sole interest, such as it is, is in the rights of a person with only a tenuous, non-residential relationship to the Commonwealth. That link is not in the court's view significant enough to warrant the application of Kentucky law (even by a Kentucky court) in the face of the overwhelming connection that the case has with Indiana. Consequently we hold that the law of Indiana must govern the substance of this litigation.

    The court will enter a separate order consistent with this opinion.

                                            **Charles R. Simpson III, Judge**
                                             **United States District Court**